IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VAN STEED, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| -vs- | ) | Case No. CIV-06-348-F |
| | ) | |
| WARRIOR CAPITAL, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER ON MOTIONS TO DISMISS</u>

The following motions are before the court, having been fully briefed and having been argued on April 3, 2007:

1.     Defendants Warrior Capital, LLC, Darrel Uselton, Jack Uselton, Frank Uselton, Scott Uselton, and Michael Uselton's Motion to Dismiss Second Amended Complaint, filed on October 26, 2006 (doc. no. 61);

2.     Motion to Dismiss of Defendants Legacy Trading and Mark Uselton, filed on October 26, 2006 (doc. no. 62);

3.     Motion to Dismiss of Defendants Advanced Powerline Technologies, Inc., Advanced Powerline Oklahoma, International Development Consultants, Daniel M. Hatton, Roland Butler, Timothy Pace, and Dorine Nyman, individually and d/b/a International Development Consultants, filed on October 30, 2006 (doc. no. 65); and

4.     Defendants Mark Robertson and Robertson & Williams' Motion to Dismiss Plaintiffs' Second Amended Complaint, filed on November 3, 2006 (doc. no. 66).

As the court addresses these motions, the court is mindful of the general pleading requirements set forth in Rule 8(e), Fed.R.Civ.P., as well as the requirement

of Rule 9(b) that in all averments of fraud, the circumstances constituting fraud shall be stated with particularity. Also relevant, with respect to the securities fraud claims, are the requirements of the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4.

Having carefully considered the briefs, and with the benefit of the arguments presented by able counsel for the parties, the court has concluded (giving plaintiffs their due under Conley v. Gibson, 355 U.S. 41 (1957) and giving defendants their due under Rule 9(b) and the PSLRA) that all of the motions other than the motion of defendants Mark Robertson and Robertson & Williams should be **DENIED**. The court concludes that the allegations in the Second Amended Complaint, except as to Mark Robertson and Robertson & Williams, are sufficient (even if in some respects barely sufficient) to survive these motions to dismiss.[1]

The only paragraphs of the Second Amended Complaint which contain even arguably well-pleaded facts specific to the defendant Mark A. Robertson ("lawyer") and Robertson & Williams ("law firm") are paragraphs 71 and 89. Paragraph 71 is in the section of the Second Amended Complaint in which plaintiffs plead their Fifth Cause of Action, for securities fraud, under §10 of the Securities Exchange Act of 1934. Paragraph 89 is in the section of the Second Amended Complaint in which plaintiffs plead their Sixth Cause of Action, for civil conspiracy. Paragraph 71 states as follows:

> 71.     As part of the fraudulent scheme and/or device, Defendants Robertson and Robertson & Williams rendered legal opinions and

---

[1] In considering these motions, the court considers only the well-pleaded facts set forth in the Second Amended Complaint. Thus, for instance, the court accords no significance at all to the first sentence of paragraph 27 of the Second Amended Complaint. Blanket allegations like that serve no useful purpose in a case of this kind, involving the number of parties, claims and substantive theories that this case involves, and would appear to have been made in disregard of the admonition set forth at footnote 7 on page 7 of this court's August 21, 2006 order (doc. no. 49).

performed legal work for the other Defendants which assisted and aided the other Defendants in the perpetration of the fraudulent scheme and/or device, including the formation of Defendant Advanced Powerline Oklahoma, which was specifically formed by Defendants to facilitate the perpetration and execution of the fraudulent scheme/device. In doing so, Defendants Robertson & Williams acted intentionally and/or with deliberate recklessness. For some time during the period from May to September 2004, Defendants Robertson and Robertson & Williams had possession of the corporate records for Defendant Advanced Powerline. Plaintiffs are informed and believe and based on such information and belief allege that Defendants Robertson and Robertson & Williams reviewed said corporate books and, thus, knew of the falsity of the above-mentioned representations of material fact and of the fraudulent scheme and/or device. Plaintiffs are informed and believe and based on such information and belief allege that Defendants Robertson and Robertson & Williams knew or should have known about the backdating of the corporate minutes of Defendant Advanced Powerline but nevertheless proceeded with deliberate recklessness.

Paragraph 89 is basically a cut and paste of paragraph 71, except for the reference to the "illegal agreement and conspiracy" at the beginning of paragraph 89, and except that the final sentence of paragraph 71 is not repeated in paragraph 89:

89.    As part of the illegal agreement and conspiracy, Defendants Robertson and Robertson & Williams rendered legal opinions and performed legal work for the other Defendants which assisted and aided the other Defendants in the perpetration of the fraudulent scheme and/or device, including the formation of Defendant Advanced Powerline Oklahoma, which was specifically formed by Defendants to facilitate the perpetration and execution of the fraudulent scheme/device. In doing so, Defendants Robertson & Williams acted intentionally and/or with deliberate recklessness. For some time during the period from May to September 2004, Defendants Robertson and Robertson & Williams had possession of the corporate records for Defendant Advanced Powerline. Plaintiffs are informed and believe and based on such information and belief allege that Defendants Robertson and Robertson & Williams reviewed said corporate books and, thus, knew of the falsity of the

above-mentioned representations of material fact and of the fraudulent scheme and/or device.

As was discussed at the oral arguments with respect to the pending motions to dismiss, the court certainly looks to the Second Amended Complaint as a whole to gain an understanding of the overall nature of the claims asserted by the plaintiffs, the interrelationships among the defendants, and the respective roles which plaintiffs assert were played by the defendants in the sequence of events set forth in the Second Amended Complaint.  However, once that general understanding of the nature of plaintiffs' claims is divined from the Second Amended Complaint as a whole, the court must scrutinize the Second Amended Complaint for specific allegations which are sufficient to support the continuation of this action as against each individual defendant.  Thus, the court's obligation at this juncture, as plaintiffs' counsel quite correctly said to the court at argument, is to look "to the substance of the allegation" against lawyer and law firm.

It must be borne in mind that special pleading rules apply to both the Fifth Cause of Action and the Sixth Cause of Action.

Fifth Cause of Action – Securities Fraud.

In the Fifth Cause of Action, plaintiffs assert a claim for securities fraud under § 10 of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (17 CFR § 240.10b-5).  The parties are at odds as to whether plaintiffs assert a claim under subsection (b) of Rule 10b-5.  Plaintiffs maintain that they are proceeding only under subsections (a) and (c) of Rule 10b-5.  Lawyer and law firm assert that, in reality, plaintiffs' securities fraud claim is asserted under subsection (b) of Rule 10b-5. If the Rule 10b-5 claim is asserted under subsection (b) of that rule, then two separate pleading requirements are applicable under PSLRA.  First, the stringent requirements of 15 U.S.C. § 78u-4(b)(1) apply, requiring specific allegations as to "each statement

4

alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." Secondly, under 15 U.S.C. § 78u-4(b)(2), the Second Amended Complaint must "with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."

If, as plaintiffs maintain, their securities fraud claim is based on "scheme" liability under subsections (a) and (c) of Rule 10b-5, the § 78u-4(b)(1) pleading requirement does not apply, but the § 78u-4(b)(2) pleading requirement *does* apply. *See, e.g.*, Enron Corporation Securities Litigation, 439 F.Supp.2d 692, 722 (S.D. Tex. 2006); Alstom SA Securities Litigation, 406 F.Supp.2d 433, 474-75 (S.D.N.Y. 2005); In re Parmalat Securities Litigation, 383 F.Supp.2d 616, 621-22 (S.D.N.Y. 2005); and In re Parmalat Securities Litigation, 376 F.Supp.2d 472, 491-92 (S.D.N.Y. 2005).

Regardless of the extent to which the PSLRA pleading requirements are triggered, the special pleading requirements of Rule 9(b), Fed.R.Civ.P. apply to plaintiffs' fraud claims. Thus, even though plaintiffs' Sixth Cause of Action is not a federal securities law claim and is thus not governed by PSLRA, Rule 9(b) nevertheless obligates plaintiffs to specify what deceptive or manipulative acts were performed, which defendants performed them, when the acts were performed, and what effect the scheme had on the plaintiffs. *See, e.g.,* Enron, 439 F.Supp.2d at 722.

Bearing the applicable pleading rules in mind, the court will first address the sufficiency of the plaintiffs' allegations in support of their federal securities law claim against lawyer and law firm.

The relevant paragraph of the Second Amended Complaint is paragraph 71, quoted in full above. Paragraph 71 refers to "legal opinions" rendered by lawyer and

law firm, but does not say what the gist of those legal opinions was.  Paragraph 71 refers to "legal work" performed for the other defendants which "assisted and aided" the other defendants in the perpetration of the fraudulent scheme or devise, but does not say what that legal work consisted of.  Having failed to allege the gist of the legal opinions or the nature of the legal work, paragraph 71 perforce fails to aver any respect in which the plaintiffs relied on anything done by lawyer and law firm.  To be sure, the final sentence of paragraph 71 asserts, on information and belief, that lawyer and law firm knew about the backdating of corporate minutes, but, on that subject, nothing more is alleged as against lawyer and law firm.

Under 15 U.S.C. § 78u-4(b)(2), it is not sufficient just  to allege facts which may indicate scienter.  Plaintiff must "state with particularity facts giving rise to a strong inference" of scienter.  Taking the Second Amended Complaint as a whole, but focusing particularly on paragraph 71, it is evident that the Second Amended Complaint fails to accomplish that.  Scienter is the "the intent to deceive, manipulate, or defraud."  Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 (1976).  Paragraph 71 wholly fails to plead *facts* giving rise to a "strong inference" that lawyer and law firm had the requisite state of mind.  Moreover, for the reasons discussed below with respect to the Sixth Cause of Action, the virtually identical relevant averments in the Fifth Cause of Action are insufficient, under Rule 9(b), Fed.R.Civ.P., to state a claim for fraud against lawyer and law firm.

As against lawyer and law firm, the Fifth Cause of Action fails as a matter of substance as well as from a pleading standpoint.  To the extent that the Second Amended Complaint in general, and paragraph 71 in particular, intelligibly articulate a claim against lawyer and law firm, it is clear that the claim asserted is a claim that lawyer and law firm aided and abetted the other defendants in violating the securities laws (or, in plaintiffs' words, "assisted and aided" the other defendants).  The court's

analysis on this point begins with <u>Central Bank of Denver v. First Interstate Bank of Denver</u>, 511 U.S. 164 (1994) and <u>Anixter v. Home-Stake Production Company</u>, 77 F.3d 1215 (10th Cir. 1996).

In <u>Anixter</u>, the Court of Appeals undertook a thorough discussion and analysis of the Supreme Court's decision, in <u>Central Bank</u>, in which the Supreme Court held that aiders and abettors may not be held liable under § 10(b) and Rule 10b-5. There is no need to repeat the <u>Anixter</u> discussion here. The relevant portion of the <u>Anixter</u> opinion, which controls the decision in the case at bar, appears at pp. 1223-1227 of 77 F.3d. Guided by <u>Anixter</u>, the court's task in the case at bar is to determine whether the relevant portions of the Second Amended Complaint assert primary violations of § 10(b) and Rule 10b-5 or whether the claim asserted against lawyer and law firm is, essentially, a claim for aiding and abetting. In <u>Anixter</u>, the court put the issue as to Norman Cross, an independent auditor, as follows: "Here, we must determine whether Cross himself committed a violation of § 10(b) and Rule 10b-5, or whether the sum of his conduct only amounted to aiding and abetting others in their violations." *Id.* at 1224. After recognizing that "deciding when conduct constituting aiding and abetting rises to the level of prohibited primary conduct is not well settled," *id.*, the court concluded that retrial was necessary because, viewing the jury's verdict in light of the evidence before it, the verdict was fatally tainted by the trial court's instruction on liability for aiding and abetting. *Id.* at 1230, 1233. In so holding, the Court of Appeals concluded that

> [I]n order for accountants to "use or employ" a "deception" actionable under the antifraud law, they must themselves make a false or misleading statement (or omission) that they know or should know will reach potential investors. In addition to being consistent with the language of the statute, this rule, though far from a bright line, provides more guidance to litigants than a rule allowing liability to attach to an

accountant or other outside professional who provided "significant" or "substantial" assistance to the representations of others.

77 F.3d at 1226-27 (citing <u>Central Bank</u>, 511 U.S. at 188-89).

It is also noteworthy that, in <u>Anixter</u>, the Court of Appeals expressly rejected formulations by other courts which, for instance, concluded that an accountant may be primarily liable based on a "significant role" in drafting a letter. *Id.* at 1226, n.10. In so doing, the court stated that cases which permit liability to attach "without requiring a representation to be made by defendant" do not comport with <u>Central Bank</u>. *Id.* Thus, the plain import of <u>Central Bank</u> and <u>Anixter</u> is that aiders and abettors, even if culpable in an abstract sense - or perhaps both culpable and liable on some other legal basis - are simply not within the compass of § 10(b) and Rule 10b-5.

In the case at bar, paragraph 71 of the Second Amended Complaint clearly stops short of alleging that lawyer and law firm made any representations to the plaintiffs, much less representations on which plaintiffs relied.  Thus, although the line between primary liability and aiding and abetting liability under § 10(b) and Rule 10b-5 is certainly a difficult line to draw in some cases, the task is not difficult in the case at bar:  Plaintiffs, on this their third attempt to plead a securities fraud claim against lawyer and law firm, have stopped short of alleging that which the court in <u>Anixter</u> held was indispensable.  Regardless of whether the securities fraud claim is regarded as a statement or omission claim under subsection (b) of Rule 10b-5, or a "scheme" claim under subsections (a) and (c), lawyer and law firm are alleged, at most, to have been the compliant servants of the primary violators.  Plaintiffs have not alleged that lawyer and law firm made any statements at all to plaintiffs or that lawyer and law firm engaged in any manipulative or deceptive acts on which plaintiffs relied.

Before proceeding to an analysis of the averment of "civil conspiracy" under paragraph 9 of the Second Amended Complaint, one additional aspect of the securities

8

fraud claim should be noted.  Wholly aside from the foregoing analysis of plaintiffs' attempt to assert "scheme" liability under subsections (a) and (c) of Rule 10b-5, it is apparent to the court that, as a practical matter, plaintiffs' securities fraud claim, at least against lawyer and law firm, is, in essence, a claim for a misrepresentation or omission (subsection (b)) rather than a "scheme" claim under subsections (a) and (c). A statement that is, in essence, a misrepresentation (or omission) claim under subsection (b) may not be recast as a claim under subsection (a) or (c) so as to evade the pleading requirements which apply in misrepresentation cases.  *See* Alstom SA Securities Litigation, supra., 406 F.Supp.2d at 474-75; Schnell v. Conseco, Inc., 43 F.Supp.2d 438, 447-48 (S.D.N.Y. 1999).  Treating plaintiffs' securities fraud claim as a subsection (b) claim, which it is (at least as against lawyer and law firm), it is plain that plaintiffs have not satisfied the pleading requirements of 15 U.S.C. § 78u-4(b)(1), which governs claims asserted under subsection (b) of Rule 10b-5. Sixth Cause of Action – Civil Conspiracy.

As has been noted, plaintiffs seek to state their civil conspiracy claim as their Sixth Cause of Action.  As against lawyer and law firm, the key averments are in paragraph 89, quoted in full above.  If anything is clear from paragraph 89, it is clear that the alleged conspiracy was a conspiracy to commit fraud.  Thus, to state a claim against lawyer and law firm in plaintiffs' Sixth Cause of Action, it was necessary for plaintiffs to satisfy both the requirements for pleading a conspiracy and for pleading fraud.

Given the lenient standard of Conley v. Gibson and its progeny, plaintiffs may have adequately pled a civil conspiracy in paragraph 89, even though there is no allegation as to the identity of the conspirators, the object of the conspiracy, or the nature of the agreement which lay at the heart of the conspiracy.  *See, e.g.,* Gaylord Entertainment v. Thompson, 958 P.2d 128 (Okla. 1998) and Dill v. Rader, 583 P.2d

496 (Okla. 1978).  What is clear, however, is that paragraph 89 falls short of adequately alleging a conspiracy to commit *fraud*.  *See, e.g.,*  American United Life Insurance Co. v. Martinez, ___ F.3d ___, 2007 WL 677729 (11ᵗʰ Cir. March 7, 2007)*;* Sigg v. District Court of Allen County, 2007 WL 913926, at *12 (D. Kan. 2007); and In re Qwest Communications International, Inc. Securities Litigation, 387 F.Supp.2d 1130, 1153 (D. Colo. 2005).

Rule 9(b), Fed.R.Civ.P., requires that, in all averments of fraud, "the circumstances constituting fraud . . . shall be stated with particularity."  The salutary purposes of Rule 9(b) are discussed in 2 Moore's Federal Practice, § 9.03[1] (Matthew Bender 3d Ed.), a discussion which need not be repeated here.  Absent exceptional circumstances (not shown in the case at bar), Rule 9(b) "usually requires the claimant to allege at a minimum the identity of the person who made the fraudulent statement, the time, place, and content of the misrepresentation, the resulting injury, and the method by which the misrepresentation was communicated."  *Id.* at § 9.03[1][b]. Conclusory allegations of fraud are insufficient. *Id.*, § 9.03[1][c]. Thus, Rule 9(b) has the effect, among others, of obliging a fraud plaintiff, subject to the strictures of Rule 11, to give the fraud defendant and the court an intelligible factual preview, at the pleading stage, sufficient to establish that there is a viable fraud claim if the essential allegations are true and that the plaintiff is not merely using the complaint as a ticket to the discovery process in the hope of finding a case.  Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4ᵗʰ Cir. 1999); Hayduk v. Lanna, 775 F.2d 441, 443 (1ˢᵗ Cir. 1985).

Measuring the allegations of the Second Amended Complaint by these standards, the court concludes that plaintiffs have plainly fallen short, on this their third try, of adequately alleging a conspiracy on the part of lawyer and law firm to commit fraud.  The Second Amended Complaint does not, with sufficient specificity,

inform lawyer and law firm (as well as the court) of the "who, what, when, where, and how" of the conspiracy by lawyer and law firm to commit fraud.[2]  *See* the discussion on page 3 of the court's August 21, 2006 order (doc. no. 49).  The court therefore concludes that the motion of lawyer and law firm to dismiss the Sixth Cause of Action should be granted.

Defendants Mark Robertson and Robertson & Williams' Motion to Dismiss Plaintiffs' Second Amended Complaint, filed on November 3, 2006 (doc. no. 66) is **GRANTED**.  The other motions to dismiss, listed on the first page of this order, are **DENIED**.

The court does not discern a useful purpose to be served by affording plaintiffs a fourth opportunity to allege viable claims against lawyer and law firm.  *See, e.g.,* Luce v. Edelstein, 802 F.2d 49, 56 (2nd Cir. 1986); Southland Secs. Corp. v. INSpire Insurance Solutions, Inc., 365 F.3d 353, 384-85 (5th Cir. 2004).  Leave to amend is denied.  Plaintiffs' claims are therefore **DISMISSED WITH PREJUDICE** as against lawyer and law firm.

DATED April 11, 2007.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0348p029(pub).wpd

---

[2] At least as against lawyer and law firm, any impression of detail and specificity that might result from a quick review of the Second Amended Complaint (lengthy though it is) would be illusory.  As Judge Patrick Higginbotham aptly put it: "A complaint can be long-winded, even prolix, without pleading with particularity.  Indeed, such a garrulous style is not an uncommon mask for an absence of detail."  Williams v. WMX Technologies, Inc., 112 F.3d 175, 178 (5th Cir. 1997), *cert. denied*, 522 U.S. 966 (1997).